UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SARAH B., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  4:19 CV 1761 JMB |
| | ) | |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of Social | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This action is before the Court pursuant to the Social Security Act, 42 U.S.C. §§ 401, *et seq.* ("the Act").  The Act authorizes judicial review of the final decision of the Social Security Administration denying Plaintiff Sarah B.'s ("Plaintiff") application for disability benefits under Title II of the Social Security Act,  see 42 U.S.C. §§ 401 et seq.  All matters are pending before the undersigned United States Magistrate Judge with the consent of the parties, pursuant to 28 U.S.C. § 636(c).  Substantial evidence supports the Commissioner's decision, and therefore it is affirmed.  See 42 U.S.C. § 405(g).

**I.   Procedural History**

On August 4, 2016, Plaintiff filed an application for disability benefits, arguing that her disability began on June 6, 2015,[1] as a result of a severely broken jaw and teeth, temporomandibular joint disorder, headaches, migraine headaches, dizziness, sleep deprivation,

---

[1] Plaintiff amended her alleged onset date from November 15, 2015, to June 6, 2015.  (Tr. 33, 182)

1

inability to chew/eat food properly, numbness in her lower face, and inability to open mouth completely.  (Tr. 100, 171-72)  On November 15, 2016, Plaintiff's claims were denied upon initial consideration.  (Tr. 92-95)  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ").  Plaintiff appeared at the hearing (with counsel) on September 13, 2018, and testified concerning the nature of her disability, her functional limitations, and her past work.  (Tr. 29-53)  The ALJ also heard testimony from Deborah Determan, a vocational expert ("VE").  (Tr. 53-60, 253-55)  The VE opined as to Plaintiff's ability to perform her past relevant work and to secure other work in the national economy, based upon Plaintiff's functional limitations, age, and education.  (Id.)  After taking Plaintiff's testimony, considering the VE's testimony, and reviewing the rest of the evidence of record, the ALJ issued a decision on November 19, 2018, finding that Plaintiff was not disabled, and therefore denying benefits.  (Tr. 12-24)

Plaintiff sought review of the ALJ's decision before the Appeals Council of the Social Security Administration ("SSA").  (Tr. 1-6)  On May 6, 2019, the Appeals Council denied review of Plaintiff's claims, making the November 19, 2018, decision of the ALJ the final decision of the Commissioner.  Plaintiff has therefore exhausted her administrative remedies, and her appeal is properly before this Court.  See 42 U.S.C. § 405(g).

In her brief to this Court, Plaintiff raises three issues.  First, Plaintiff argues that the ALJ failed to consider a closed period of disability.  Next, she argues that the ALJ erred by failing to consider Listing 11.03 (convulsive epilepsy).  Last, Plaintiff argues that the ALJ's Residual Function Capacity ("RFC") determination is not supported by substantial evidence.  The Commissioner filed a detailed brief in opposition.

As explained below, the Court has considered the entire record in this matter.  Because the decision of the Commissioner is supported by substantial evidence, it will be affirmed.

2

II.     **Medical Records**

The administrative record before this Court includes medical records concerning Plaintiff's health treatment from June 8, 2015, through July 11, 2018.  The Court has considered the entire record.  The following is a summary of pertinent portions of the medical records relevant to the matters at issue in this case.

A.     **Anderson Hospital Emergency Room** (Tr. 258-63)

On June 8, 2015, Plaintiff presented in the Anderson Hospital's Emergency Room for injuries she sustained after tripping over a cooler, hitting her chin on the ground, and breaking three teeth.  A CT of Plaintiff's facial bones showed a complicated jaw fracture.  The treating doctor referred Plaintiff to an oral surgeon for treatment.

B.     **Mercy Hospital St. Louis – Drs. Patrick Morris and Damian Findlay**
 (Tr. 264-350)

On June 10, 2015, Dr. Patrick Morris surgically repaired Plaintiff's jaw fractures by implanting two plates and five screws during open reduction and internal fixation surgery.  Dr. Morris performed another surgery on October 28, 2015, to repair Plaintiff's jaw fracture by moving her lower jaw into a new position and implanting gauge wires and screws.

On January 13, 2016, Dr. Damian Findlay surgically removed the implanted plates and screws to fix Plaintiff's jaw fractures due to hardware infection.  Dr. Findlay performed another surgery on June 1, 2016, to resolve an inflammatory reaction.

C.     **Feinerman Family Practice – Dr. Adrian Feinerman** (351-60)

On October 25, 2016, Dr. Adrian Feinerman completed a consultative examination.  Plaintiff complained of headaches since June 2015, secondary to mandible fractures and multiple surgeries, dizziness, and pain in temporomandibular joints.  Plaintiff reported being able to walk, stand, sit, and do fine and gross manipulation and taking no medications except over-the-counter

3

medications.  Plaintiff reported losing thirty pounds in the last year.  Examination showed no limitation in range of motion, strong grip strength, normal muscle strength throughout.  Dr. Feinerman observed Plaintiff's ambulation to be normal, and Plaintiff had no problem tandem walking, standing on her toes and heels, or squatting and arising,

      **D.**    <u>**Neurology Associates – Dr. James Alonso**</u> (Tr.361-72)

On February 27, 2017, Plaintiff presented for treatment and reported having chronic headaches since her jaw/head injury in June 2015.  Dr. Alonso opined that Plaintiff's description of her headaches "raises suspicion for migraine headaches[,]" but "her risk factor including her recent injury also raises suspicions for concomitant factors including:  postconcussive syndrome and musculoskeletal tension associated with jaw and neck pains."  (Tr. 361)  Plaintiff reported having headache pains, numbness in her chin and bottom teeth, disequilibrium, and feeling off balance with sudden movement of her head.  Plaintiff reported taking cyclobenzaprine and over-the-counter medications but without significant effectiveness.  Examination showed fluent language, intact memory, good attention and concentration, and a generally unremarkable examination other than numbness in Plaintiff's bilateral chin and lower teeth.  Dr. Alanso directed Plaintiff to continue her present pain management and medication regimen and keep the appointment with her dentist for further evaluation and management of discomfort with her teeth that may be a contributing factor to her pain.  Dr. Alanso directed Plaintiff to schedule follow-up treatment in six months, but the record does not include another treatment record from him.  A March 23, 2017, MRI of Plaintiff's brain showed no abnormalities or any significant abnormal signal within her brain.

      **E.**    <u>**Esse Health – Dr. Stan Vriezelaar and Eileen Steiniger, ANP**</u> (Tr.373-94, 406-40)

Between January 10, 201, and July 11, 2018, Dr. Vriezelaar and advanced nurse

practitioner Eileen Steiniger ("ANP Steiniger") treated Plaintiff for her headaches.

On January 10, 2017, ANP Steiniger noted that Plaintiff's jaw fractures were likely the root of her migraine issue and recommended that Plaintiff use a nightguard to prevent teeth grinding. ANP Steiniger directed Plaintiff to take Excedrin twice a day.  Plaintiff reported having daily migraine headaches with symptoms of jaw pain, muscle tension, and light sensitivity.  Plaintiff indicated that she still had two broken teeth and had not been treated by a dentist.  In follow-up treatment on May 24, 2017, ANP Steiniger continued Plaintiff's medication regimen and urged her to see a dentist for treatment of her two broken teeth and recommended that Plaintiff stop smoking. ANP Steiniger found Plaintiff's migraines were stable.  Plaintiff indicated that she takes care of the animals in the home.

On July 6, 2017, Dr. Vriezelaar found Plaintiff's post-traumatic headaches with migraine type features to be stable.

In follow-up treatment on March 6, 2018, Plaintiff reported having chronic daily headaches with migraine type features such as nausea and photophobia.

On June 18 2018, Plaintiff presented for treatment of her chronic conditions and for a female preventative examination with ANP Steiniger.  Although Plaintiff reported being a health club member, she indicated that she never exercises.  ANP Steiniger found Plaintiff's post-traumatic headaches to be stable, and Plaintiff reported that gabapentin improved her pain without causing drowsiness and requested an increase in dosage.  ANP Steiniger increased Plaintiff's dosage of gabapentin.  ANP Steiniger indicated that Plaintiff should receive follow-up treatment in one year with Dr. Vriezelaar.

**F.**   **Missouri Baptist Pain Management Center – Dr. Xiaobin Yi** (Tr. 395-401)

On June 12, 2017, on referral by Dr. Vriezelaar, Plaintiff received pain management

treatment with Dr. Xiaobin Yi to determine how to manage her progressively worsening headaches.  Plaintiff reported that her headache pain interfered with her sleep and daily functioning, and any physical activity caused increased pain.  Plaintiff explained that after shattering her entire jaw bilaterally, she had four surgeries in her jaw and facial area, and she started to develop severe headaches with some nausea and vomiting associated with the headaches. Plaintiff reported that pain medications helped, and she currently used Tylenol, Excedrin, cyclobenzaprine as needed, and amitriptyline at bed time with mild benefit.  Examination showed Plaintiff had a normal gait, 5/5 strength throughout, and normal range of motion and muscle strength of upper extremities.  Dr. Yi assessed Plaintiff with chronic pain due to trauma and intractable chronic post-traumatic headaches and determined that no potent opioids were indicated at that time.  Dr. Yi continued Plaintiff's current medication regimen, and indicated he would schedule nerve blocks during her next visit in six to eight weeks.

### III.        Opinion Evidence

#### A.  Function Report (Tr. 194-201)

In a Function Report-Adult completed with her disability application, Plaintiff reported taking care of her animals, running errands, preparing meals, visiting friends, and shopping for clothing and groceries up to a couple hours at a time.  Plaintiff indicated that looking at a computer screen for any length of time triggers a migraine headache.  Plaintiff listed watching television as her interest but noted that television watching can be limited due to her headaches.

#### B.  Disability Determination Explanations (Tr. 62-90)

In the Disability Determination Explanation form completed by Dr. Julio Pardo, a state agency consultant on November 14, 2016, stated that the evidence does not support an impairment that meets or equals a listing currently, specifically Listings 1.07 and 11.02.  (Tr. 62-70)  At the

reconsideration level, Dr. Joann Mace, a state agency consultant, affirmed Dr. Prado's determination, noting that Plaintiff had not required any emergency room visits for her pain and had not sought additional treatment for her headaches.  (Tr. 80-90).

## IV.    The Hearing Before the ALJ

The ALJ conducted a hearing on September 13, 2018.  Plaintiff was present with an attorney and testified.  The VE also testified.  (Tr. 53-59)  At the outset of the hearing, Plaintiff's counsel noted no objections to the proposed exhibits, and specifically noted on the record that Plaintiff was not alleging any listing.  (Tr.32-33)

### A.    Plaintiff's Testimony (Tr. 31-53, 59-60)

Plaintiff began her testimony by noting that she lives with her husband in a house.  (Tr. 34)  Plaintiff testified that she drives a couple times a week to do quick errands.

Plaintiff testified that she last worked in May 2015 as an industrial steel coatings inspector.  The company closed down her division so she was laid off and has not worked since.  (Tr. 25, 51)  Her job duties included climbing ladders, inspecting floodgates and stop logs, and lifting ten pounds.  (Tr. 51, 54)  Plaintiff indicated that she applied for unemployment benefits.  (Tr. 25)  Plaintiff testified that she could not stand at a work station because standing five to ten minutes makes her tired and her head hurt.  (Tr. 51)  Plaintiff indicated that she could stand in one spot for twenty to thirty minutes.  (Tr. 52)  Plaintiff represented that if she sits too long, she has to get up and move around.

On June 6, 2015, Plaintiff was involved in an accident and had her first surgery on June 10, 2015, inserting plates in her jaw.  (Tr. 36)  In the second procedure on October 28, 2015, Plaintiff had her jaw broken and then reset.  (Tr. 37)  On January 13, 2016, Plaintiff had some

plates removed due to an infection.  (Id.)  In her last procedure on June 1, 2016, Plaintiff had a piece of a plate removed.  (Tr. 38)

Plaintiff testified that after the accident and the surgeries, she started to experience migraine headaches twenty times each month.  (Tr. 39)  Plaintiff indicated that she takes gabapentin three times a day to alleviate some of her pain but the medication causes her to be lightheaded and drowsy.  (Tr. 40)  Plaintiff testified that stress and bright lights, such as computer screens, trigger migraine headaches.  (Tr. 42)  Plaintiff indicated that she experiences bouts of dizziness every day.  (Tr. 43)

Plaintiff testified that she tries to do some laundry and vacuuming each day, and she helps with washing the dishes.  (Tr. 44)  Plaintiff goes grocery shopping every couple of weeks.  (Tr. 45)

Plaintiff explained that she is unwilling to take opioids for pain because of the highly addictive nature.  (Tr. 48)  Plaintiff testified that she never received a nerve block because she sustained extensive nerve damage from her surgeries, and the doctor was concerned a nerve block would cause total paralysis of her mouth.  (Tr.49)  Plaintiff explained that she had not had her broken teeth fixed due to finances.

**B.    The VE's Testimony**

The VE identified Plaintiff's past work as a steel inspector, a skilled job with a light exertional requirement.  (Tr. 54)

The ALJ asked the VE a series of hypothetical questions to determine whether someone Plaintiff's age, education, work experience, and specific functional limitations would be able to find a job in the local or national economy.  (Tr. 54-57)  First, the ALJ asked  the VE to assume a hypothetical individual limited to work at the light exertional level, with no climbing on ropes,

8

ladders, or scaffolds; occasional climbing on ramps or stairs, stooping, kneeling, crouching, or crawling; limited to moderate noise; no exposure to bright flashing lights; no concentrated exposure to extreme cold and fumes, odors, dust, gases, and areas with poor ventilation; no moderate exposure to work hazards, such as unprotected heights and being around dangerous moving machinery; and verbal communication is not a primary job duty.  The VE responded that such a hypothetical person would not be able to perform Plaintiff's past work, but such individual would be able to work as a merchandise marker, photocopying machine operator, and a mail clerk, all in-office positions.  (Tr. 55)  The VE explained that these jobs would allow three breaks during the day: a fifteen minute break in the morning, a thirty to sixty minute break for lunch, and a fifteen minute mid-afternoon break, as well as one or two extra three to five minutes breaks during the day to go to the bathroom.  (Tr. 56)  With respect to absences, the VE opined that if a person consistently misses more than one day of work a month then eventually this would preclude competitive employment.  (Tr. 57)

Next, the VE agreed that most of the indoor lighting for offices and warehouses is fluorescent lighting.  (Tr. 58)  In response to counsel's question, the VE indicated that if a person was unable to stay on task 20% or more during the work day, this would preclude competitive employment.  The VE opined that if a person is off-task 15% or more of the work day, competitive employment is precluded.  (Id.)

## V.   **The ALJ's Decision**

In a decision dated November 19, 2018, the ALJ determined that Plaintiff was not disabled under the Social Security Act.  (Tr. 12-24)  The ALJ determined that Plaintiff had severe migraine headaches secondary to a history of traumatic facial fractures with multiple surgeries.  (Tr. 17)  The ALJ determined that Plaintiff had an RFC to perform light work with the following

modifications:  (1) she may not climb on ropes, ladders, or scaffolds; (2) she can occasionally climb on ramps and stairs and stoop, kneel, crouch, or crawl; (3) she is limited to moderate noise with no exposure to bright flashing lights at the intensity level found on a football field; (4) she has to avoid concentrated exposure to cold and fumes, odors, dusts, gases, areas with poor ventilation and moderate exposure to work hazards such as unprotected heights and being around dangerous moving machinery; and (5) she is limited to jobs where verbal communication is not a primary job duty.  (Tr. 18-22)

The ALJ identified that Plaintiff's past relevant work as a steel inspector, a skilled job with a light exertional requirement.  (Tr. 22)  The ALJ found, based on the VE's testimony, that there are other jobs existing in the national economy she was able to perform, such as a merchandise marker, photo copy machine operator, and a mail clerk.  (Tr. 23)  Therefore, the ALJ found that Plaintiff was not under a disability within the meaning of the Social Security Act.  (Tr. 2)

The ALJ's decision is discussed in greater detail below in the context of the issues Plaintiff has raised in this matter.

## VI.   Standard of Review and Legal Framework

"To be eligible for … benefits, [Plaintiff] must prove that [she] is disabled …."  Baker v. Sec'y of Health and Human Servs., 955 F.2d 552, 555 (8th Cir. 1992); see also Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001).  Under the Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A) and 1382c (a)(3)(A).  A plaintiff will be found to have a disability "only if [his] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous

work but cannot, considering [her] age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A) and 1382c(a)(3)(B).  See also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

Per regulations promulgated by the Commissioner, 20 C.F.R § 404.1520, "[t]he ALJ follows 'the familiar five-step process' to determine whether an individual is disabled…. The ALJ consider[s] whether:  (1) the claimant was employed; (2) [she] was severely impaired; (3) [her] impairment was, or was comparable to, a listed impairment; (4) [she] could perform past relevant work; and if not, (5) whether [she] could perform any other kind of work." Martise v. Astrue, 641 F.3d 909, 921 (8th Cir. 2011) (quoting Halverson v. Astrue, 600 F.3d 922, 929 (8th Cir. 2010)). See also Bowen, 482 U.S. at 140-42 (explaining the five-step process).

The Eighth Circuit has repeatedly emphasized that a district court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration."  Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010) (quoting Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001)).  The ALJ's findings should be affirmed if they are supported by "substantial evidence" on the record as a whole.  See Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008).  Substantial evidence is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir. 2008); see also Wildman v. Astrue, 596 F.3d 959, 965 (8th Cir. 2010) (same).

Despite this deferential stance, a district court's review must be "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998).  The district court must "also take into account whatever in the record fairly detracts from that decision."  Id.  Specifically, in reviewing

11

the Commissioner's decision, a district court is required to examine the entire administrative record and consider:

1.  The credibility findings made by the ALJ.
2.  The claimant's vocational factors.
3.  The medical evidence from treating and consulting physicians.
4.  The claimant's subjective complaints relating to exertional and non-exertional activities and impairments.
5.  Any corroboration by third parties of the claimant's impairments.
6.  The testimony of vocational experts, when required, which is based upon a proper hypothetical question which sets forth the claimant's impairment.

Stewart v. Sec'y of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (citation omitted).

Finally, a reviewing court should not disturb the ALJ's decision unless it falls outside the available "zone of choice" defined by the evidence of record.  Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011).  A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance.  Id.; see also McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and [the court] may have reached a different outcome").

## VII.   Analysis of Issues Presented

In her brief to this Court, Plaintiff raises three issues.  First, Plaintiff argues that the ALJ failed to consider a closed period of disability.  Next, she argues that the ALJ erred by failing to consider whether she medically equaled Listing 11.03 (convulsive epilepsy).  Last, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence.

A.      **Closed Period of Disability**

Plaintiff argues that the ALJ failed to consider a closed period of disability.  Plaintiff contends that she was unable to work while she was recovering from each of her surgeries from June 6, 2015, through July 1, 2016.  Plaintiff cites to the medical evidence of her four surgeries in support.

The Commissioner may award Social Security disability benefits either on a continuing basis, or, where a once disabling condition later ceases to be disabling, for a "closed period." Harris v. Sec'y of Dept. of Health & Human Servs., 959 F.2d 723, 724 (8th Cir. 1992) ("[D]isability is not an all-or-nothing proposition; a claimant who is not entitled to continuing benefits may well be eligible to receive benefits for a specific period of time."); see also, e.g., Quaite v. Barnhart, 312 F. Supp.2d 1195, 1200-01 (E.D. Mo.2004) (affirming the ALJ's decision to award disability benefits for a closed period ending on a specific date where there was substantial evidence to support the ALJ's conclusion that Plaintiff had ceased being disabled as of that date).  If evidence presented shows that a plaintiff was unable to work for at least twelve months, but recovered the ability to work before the decision on her claim is made, she may be eligible for disability benefits for the time she was unable to work.  To qualify for a closed period of disability, the disabling condition must last for at least twelve months. 42 U.S.C. § 423(d)(1)(A); Karlix v. Barnhart, 457 F.3d 742, 747 (8th Cir. 2006).

The undersigned finds Plaintiff's argument for a closed period of disability difficult to understand, because the ALJ did not deny Plaintiff's claim based on insufficient duration of an ability to engage in substantial gainful employment, but because she has the RFC to perform work. Because the ALJ properly determined Plaintiff not to be disabled at any time during the relevant period, she did not err in failing to consider a closed period of disability.  See  Clark v. Bowen,

864 F.2d 66 (8th Cir. 1988) (per curiam).  Therefore, the ALJ was not required to present a rationale for not awarding a closed period of disability when she found Plaintiff has no disabling condition.  See SSR 82-52.

Plaintiff has failed to establish she met a closed period of disability which lasted at least twelve months.  In this matter, the ALJ determined Plaintiff retained the RFC to perform light work with several limitations.  (Tr. 18)  This RFC determination must be based on medical evidence that addresses Plaintiff's ability to function in the workplace.  See Stormo v. Banrhart, 377 F.3d 801, 807 (8th Cir. 2004).  The ALJ bears the primary responsibility for making the RFC determination and for ensuring there is "some medical evidence" regarding the plaintiff's "ability to function in the workplace" that supports the RFC determination.  Lauer v. Apfel, 245 F.3d 700, 703-04 (8th Cir. 2001).  This Court is required to affirm the ALJ's RFC determination if that determination is supported by substantial evidence on the record as a whole.  See McKinney v. Apfel, 228 F.3d 860, 862 (8th Cir. 2000).  In this matter, substantial evidence supports the ALJ's RFC determination.  See Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005).  Accordingly, there is no basis to find Plaintiff is entitled to a closed period of disability which lasted at least twelve months.

In sum, the record before the Court does not establish that Plaintiff's mandible surgeries were disabling for at least twelve months during the period of June 6, 2015, to July 1, 2016, and then ceased to be disabling, such as would have suggested an entitlement to a closed period of disability.  Accordingly, the Court finds that the lack of specific discussion of a closed period of disability in the ALJ's decision does not warrant remand.

B.   **Listing 11.03**

Plaintiff next argues that the ALJ erred by failing to evaluate whether her headaches

14

medically equaled Listing 11.03, relying on guidance from a Social Security Administration Question and Answer program.[2]  Plaintiff contends that the ALJ committed legal error by failing to consider whether her headaches equaled listing 11.03, noting that SSA 09-036 identifies Listing11.03 (Epilepsy – nonconclusive epilepsy) as the most analogous listing for considering medical equivalence of chronic migraine headaches.  See Program Operational Manual System ("POMS") DI 24505.015(B)(7)(b).[3]

At step three of the sequential process, an ALJ is required to analyze a claimant's medically determinable impairments to determine whether she meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1.  20 C.F.R. § 404.1520(a)(4)(iii). As a general matter, to qualify for disability benefits at step three, a claimant must establish that her impairments meet or equal a listing.  See KKC ex rel. Stoner v. Colvin, 818 F.3d 364, 370 (8th Cir. 2016).  Furthermore, "[a]n impairment meets a listing only if it meets *all* of the specified medical criteria."  Id. (quoting Sullivan v. Zebley, 493 U.S. 521, 531 (1990)).  "An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  Sullivan, 493 U.S. at 530.  The burden is on Plaintiff at step three.  See McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011).  "The severity standards for Listing-level impairments are high, because 'the listings [for adults] were designed to operate as a presumption of disability that makes further inquiry unnecessary.'"  Malott v. Colvin, 2014 WL 2759421, at *3 (W.D. Mo. June 18, 2014) (quoting Sullivan, 493 U.S. at 532).

---

[2] There is no listing that pertains specifically to migraine headaches.  Lerouge v. Saul, 2020 WL 905756, at *8 (E.D. Mo. Feb. 25, 2020).

[3] This provision of POMS no longer appears to be in effect: it is not contained in the POMS on the SSA's website.  See also David G. v. Berryhill, 2018 WL 4572981, at *5 (D. Minn. Sept. 24, 2018).

In this case, Plaintiff waived her listing argument during the administrative hearing when her representative conceded on the record that Plaintiff does not have an impairment the meets or medically equals the severity of one of the listed impairments.  (Tr. 33)  In her opinion, the ALJ specifically noted that Plaintiff's "representative did not contend that the [plaintiff] has an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1 ("the Listings")."  (Tr. 18). See Watson v. Barnhart, 194 Fed. Appx. 526, 529 (10th Cir. 2006) (finding no error where the claimant's counsel had conceded that the claimant was not arguing that her condition met or equaled a listed impairment, and ALJ therefore did not analyze whether claimant's impairments met a listing); see also Gloth v. Astrue, 2009 WL 3837471 (W.D. Mo. 2009); cf. Gregg v. Barnhart, 354 F.3d 710, 713 (8th Cir. 2003) ("[A]n ALJ is not obliged to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability.") (internal quotations omitted).  Enforcement of waivers is important to prevent a claimant from disavowing an argument at the administrative hearing and then raising the disavowed argument before a district court thereby enabling claimants to thwart the administrative process. Moreover, Plaintiff offers no meaningful changed circumstances to indicate why the listing argument should now be considered.  If her circumstances or conditions have changed, she may consider filing another application and starting the process anew. Nonetheless, even if Plaintiff had not waived her listing argument, the ALJ's decision at step three is supported by substantial evidence.

Furthermore, at the time of the ALJ's decision on November 19, 2018, Listing11.03 no longer existed as a substantive listing because the SSA revised the listings criteria used to evaluate disability claims involving neurological disorders.  See Revised Medical Criteria for

Evaluating Neurological Disorders, 81 Fed. Reg. 43048, 2016 WL 3551949 (July 1, 2016),

effective September 29, 2016, 2016 WL 3551949 (July 1, 2016); Lerouge v. Saul, 2020 WL

905756, at * 8 (E.D. Mo. Feb. 25, 2020).  The SSA explained that it will use the new listings "on

and after their effective date in any case in which [it makes] a determination or decision" and

"that Federal courts will review the Commissioner's final decisions using the rule[s] that were in

effect at the time [it] issued the decisions." Id. at 8 n.6.  Thus, under the revised listings, which

were in effect at the time of the ALJ's decision, Listing 11.03 no longer applies.  Plaintiff has not

identified, nor has the Court found, any Eighth Circuit authority requiring consideration of an

inactive listing, Listing 11.03.

Plaintiff  did not meet her burden to prove that she met the severity requirements of any

applicable listing.  The SSA now evaluates headaches under Listing 11.02.  See SSR 19-4p,

Evaluating Cases Involving Primary Headache Disorders, 2019 WL 4169635, at *7 (Aug. 26,

2019).  Indeed, the ALJ specifically noted that she had "considered all of the [Plaintiff's]

impairments individually and in combination and find that the combined clinical  findings from

such impairments do not reach the level of severity contemplated in the Listings.  Because the

record does not demonstrate the existence of an impairment that meets or equals the criteria of a

listed impairment, or of a combination of impairments equivalent in severity to a listed

impairment, disability cannot be established on the medical facts alone."  (Tr. 18)

Given that the ALJ considered the criteria of the listings in her analysis, it is likely that

she considered whether Plaintiff equaled those listings.  In addition, even if the ALJ did not

specifically state whether Plaintiff equaled Listing 11.02, the undersigned finds that no reversal

is required, because Plaintiff has not met her burden of proving that she equals the listing,

indeed, no treating or examining physician has mentioned findings equivalent in severity to the

criteria of Listing 11.02.  See Carlson v. Astrue, 604 F.3d 589, 594 (8th Cir. 2010) ("To establish equivalency, a claimant must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment.") (internal quotation omitted).

Furthermore, in support of the ALJ's determination, the Disability Determination Explanation form completed by a state agency consultant Dr. Julio Pardo stated that the evidence does not support an impairment that meets or equals a listing currently, specifically Listings 1.07 and 11.02.  (Tr. 62-70)  At the reconsideration level, Dr. Joann Mace, a state agency consultant, affirmed Dr. Prado's determination, noting that Plaintiff had not required any emergency room visits for her pain and had not sought additional treatment for her headaches.  (Tr. 80-90).

Finally, an ALJ's failure to make a statement regarding a specific listing does not require reversal where the evidence as a whole supports the finding that the plaintiff does not meet or equal that listing.  See, e.g., Boettsher v. Astrue, 652 F.3d 860, 863 (8th Cir. 2011) ("There is no error when an ALJ fails to explain why an impairment does not equal one of the listed impairments as long as the overall conclusion is supported by the record."); see also, Bentley v. Astrue, 2012 WL 2426842, at *2 (W.D. Mo. June 26, 2012) (holding that the ALJ's failure to address whether  plaintiff met or equaled a specific listing did not require reversal where there was no compelling evidence to support the conclusion that plaintiff met or equaled the criteria of that listing).  As the absence of evidence supporting medical equivalency can constitute substantial evidence, here there is substantial evidence supporting the ALJ's finding that Plaintiff did not medically equal a listing.

### C.     Residual Functional Capacity

Plaintiff argues that the ALJ's RFC is not supported by substantial evidence because the

ALJ found that she must avoid "exposure to bright flashing lights like the intensity level found in a football field" (Tr. 18) without any support.

A claimant's RFC is the most an individual can do despite the combined effects of his credible limitations.  See 20 C.F.R. § 404.1545.  "The RFC 'is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities.'"  Roberson v. Astrue, 481 F.3d 1020, 1023 (8th Cir. 2007) (quoting SSR 96-8p, 1996 WL 374184, at *3 (S.S.A. 1996)).  An ALJ's RFC finding is based on all of the record evidence, the claimant's testimony regarding symptoms and limitations, the claimant's medical treatment records, and the medical opinion evidence.  See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010); see also 20 C.F.R. § 404.1545; SSR 96-8p (listing factors to be considered when assessing a claimant's RFC, including medical source statements, recorded observations, and "effects of symptoms … that are reasonably attributed to a medically determinable impairment.").  The ALJ must explain her assessment of the RFC with specific references to the record.  SSR 96-8 (the RFC assessment must cite "specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)" in describing how the evidence supports each conclusion).  Throughout this inquiry, the burden of persuasion to prove disability and to demonstrate RFC is on the claimant.  Hensley v. Colvin, 829 F.3d 926, 932 (8th Cir. 2016).  Disability is not determined by the presence of impairments, but by the effect the impairments have on the individual's ability to perform substantial gainful activity.  20 C.F.R. §§ 404.1545(e), 416.945(e).

To the extent Plaintiff argues that the ALJ's finding that she must avoid "exposure to bright flashing lights like the intensity level found in a football field" (Tr. 18) is without any support in the record, Plaintiff is mistaken.  A review of the record shows that the ALJ used the football lights as an example, presented this limitation to the VE, and this limitation is supported by substantial

evidence on the record as a whole.  Indeed, there was other evidence, such as Plaintiff's function report and administrative hearing testimony, upon which the ALJ could base her decision. Furthermore, Plaintiff testified that her headache events are associated with sensitivity to light including fluorescent lights, bright lights, and television screens, requiring her to lie down in a dark room when she is experiencing migraine symptoms.[4]  (Tr. 42)  Plaintiff's argument is without merit and belied by the text of the ALJ's written opinion.

The ALJ's determination does not contradict any of the medical evidence, and nothing else in the record detracts from her decision.  Based on the objective medical evidence and Plaintiff's testimony and after evaluating Plaintiff's subjective symptoms, the ALJ determined that Plaintiff retained the RFC to perform light work[5] with additional enumerated limitations/restrictions.  The ALJ further explained that, in order to avoid exacerbation of Plaintiff's migraine headaches and considering her testimony, she included additional limitations, in particular, she must avoid bright flashing lights.  (Tr. 20)  In any case, the ALJ is not required to list each function which she includes in the RFC followed by the specific evidence which supports a finding that the plaintiff can engage in that function.  See Davis v. Colvin, 2015 WL 1964791, at *5 (W.D. Mo. May 1,

---

[4] The only evidence in the record supporting Plaintiff's alleged need to lie down is Plaintiff's administrative hearing testimony.  There is no objective medical evidence substantiating Plaintiff's need to lie down.  See Harris v. Barnhart, 356 F.3d 926, 930 (8th Cir. 2004) (whether there is a need to lie down is a medical question requiring medical evidence; record did not contain any evidence that medical condition required claimant to lie down for hours each day). A review of the doctors' treatment notes show that none of the doctors ever recommended that Plaintiff should lie down in a dark room to alleviate her migraine headaches.  Moreover, in the function report Plaintiff completed, she did not report a need to lie down.

[5] "According to the regulations, 'light work' is generally characterized as (1) lifting or carrying ten pounds frequently; (2) lifting twenty pounds occasionally; (3) standing or walking, off and on, for six hours during an eight-hour workday; (4) intermittent sitting; and (5) using hands and arms for grasping, holding, and turning objects."  Holley v. Massanari, 253 F.3d 1088, 1091 (8th Cir. 2001) (citing 20 C.F.R. § 404.1567(b)).

2015) As detailed by the ALJ and throughout her decision, there was sufficient other medical evidence of record supporting the determination that Plaintiff had the RFC to perform light work with additional restrictions.  Accordingly, it cannot be said that the ALJ's decision is not supported by substantial evidence on the record as a whole.

Because the ALJ based her RFC assessment upon review of all the credible, relevant evidence of record, and the RFC is supported by some medical evidence, it will not be disturbed. See Baldwin v. Barnhart, 349 F.3d 549, 558 (8th Cir. 2003).  See also Goff, 421 F.3d at 789 ("An administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

**VIII.   Conclusion**

When reviewing an adverse decision by the Commissioner, the Court's task is to determine whether the decision is supported by substantial evidence on the record as a whole.  Davis v. Apfel, 239 F.3d 962, 966 (s Cir. 2001).  Substantial evidence is defined to include such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion.  Id.  Where substantial evidence supports the Commissioner's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently.  Id.; see also Igo v. Colvin, 839 F.3d 724, 728 (8th Cir. 2016).  For the foregoing reasons, the Court finds that the ALJ's determination is supported by substantial evidence on the record as a whole.  See Finch, 547 F.3d at 935.  Similarly, the Court cannot say that the ALJ's determinations in this regard fall outside the available "zone of choice," defined by the record in this case.  See Buckner, 646 F.3d at 556.  For the reasons set forth above, the Commissioner's decision denying benefits is affirmed. Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner be **AFFIRMED**.

A separate Judgment shall accompany this Memorandum and Order.

/s/ *John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 15th day of June, 2020.